# EXHIBIT A

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
         jvenditti@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
02/29/2024
By: _____R. Fisher_____ Deputy

**SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF SACRAMENTO**

| | |
|---|---|
| EDWARD CASTILLO, individually and on behalf of all others similarly situated, | Case No.  24CV003781 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| ALARM.COM HOLDINGS, INC. and ALARM.COM, INC., | |
| Defendants. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    1

Plaintiff Edward Castillo ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants Alarm.com Holdings, Inc. and Alarm.com, Inc. (collectively, "Defendants" or "Alarm.com"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Alarm.com employs conversation intelligence services ("Services") provided by Talkdesk, Inc. ("Talkdesk") and Envision Telephony, Inc. ("Envision"). These Services derive data-driven insights from telephone conversations between the Alarm.com call center and Alarm.com consumers. Specifically, Alarm.com callers' speech is recorded and then transcribed, so that Services' artificial intelligence (AI) can read and analyze it.

2. Talkdesk's Service includes several components: *inter alia*, Agent Assist, CX Sensors, Interaction Analytics, QM Assist, Virtual Agent, and Call Recording. Envision's Service includes artificial intelligence for contact centers called Click2Coach AI. Alarm.com employs Talkdesk's and Envision's Services.

3. Through the Services, Talkdesk and Envision—as aided, agreed with, employed, and permitted by Alarm.com—monitor, read, record, learn the contents of, or otherwise intercept the conversations between Alarm.com's contact centers and Alarm.com consumers (current and prospective customers). These consumers include individuals who call Alarm.com (i.e., its customer service line) from California to, among other things, retrieve and exchange product information, request home security services, and receive additional forms of Alarm.com support.

4. Alarm.com's employment of the Services involves Talkdesk and Envision—separate and distinct third-party entities from the parties to these conversations—using the Services to eavesdrop upon and record Alarm.com conversations to which they are not a party. That is to say, Talkdesk and Envision collect the contents of telephone conversations between Alarm.com and Alarm.com consumers.

5. Talkdesk and Envision need access to this data to provide the Services' features (including, *inter alia*, call recording, call transcription, and analysis thereof) described *infra*. Thus,

Talkdesk and Envision record, access, read, and learn the contents of conversations between Californians and Alarm.com.

6.    Crucially, neither Alarm.com nor Talkdesk or Envision procured the consent of any person who interacted with Alarm.com's contact center, prior to Talkdesk and Envision recording, accessing, reading, and learning the contents of conversations between Californians and Alarm.com's contact centers.  This is despite Talkdesk and Envision having the capability to use the contents of conversations they collect through the Services for purposes other than simply providing a recording to Alarm.com.

7.    Plaintiff brings this action to prevent Defendants from further violating the privacy rights of California residents, and to recover statutory damages from Defendants for failing to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

## **PARTIES**

8.    Plaintiff Edward Castillo resides in Sacramento, California and has an intent to remain there, and is therefore a citizen of California.  Mr. Castillo was in California during his telephone call with Alarm.com's customer service line, which took place in or around February 2024.

9.    Alarm.com Holdings, Inc. is a Delaware corporation with its principal place of business at 8281 Greensboro Drive, Suite 100, Mc Lean, Virginia, 22102.  Defendant does business across the nation, as "Alarm.com technology is sold, installed and serviced by licensed service providers"[1] throughout California.[2]

10.    Alarm.com, Inc. is a subsidiary of Alarm.com Holdings, Inc.[3] and Delaware corporation with its principal place of business at 8281 Greensboro Drive, Suite 100, Mc Lean, Virginia, 22102.  Defendant does business across the nation, as "Alarm.com technology is sold, installed and serviced by licensed service providers"[4] throughout California.[5]

---

[1] https://alarm.com/for-home.

[2] https://www.alarm.com/get_started/finddealer_wizard.aspx.

[3] https://www.marketwatch.com/investing/stock/0hc2/company-profile?countrycode=uk&pid=18275209.

[4] https://alarm.com/for-home.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution and Cal. Code Civ. Proc. § 410.10.  This action is brought as a class action on behalf of Plaintiff and Class Members pursuant to Cal. Code Civ. Proc. § 382.

12.     This Court has personal jurisdiction over Defendants.  *First*, as noted above, Defendants' "technology is sold, installed and serviced by licensed service providers" throughout California.  Thus, Defendants have availed themselves of the privilege of doing business in California.  *Second*, Defendants' customer service line (and Talkdesk and Envision's recording thereof) are directly linked to Alarm.com's physical operations in California, in that consumers call the customer service center regarding Alarm.com's California installations and/or other services.  Thus, the conduct at issue here is directly related to Defendants' business in California.  *See Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *3-4 (S.D. Cal. Jan. 12, 2024).  *Finally*, Plaintiff and Class Members were harmed in California because that is where Talkdesk and Envision—as enabled by Defendants—recorded Plaintiff and Class Members.

13.     This Court is the proper venue for this action under the Cal. Code Civ. Proc. § 395.5 because Plaintiff was unlawfully recorded by Talkdesk and Envision—as enabled by Defendants—in this County.  Thus, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this County.

## FACTUAL ALLEGATIONS

### I.     The California Invasion of Privacy Act

14.     The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

---

[5] https://www.alarm.com/get_started/finddealer_wizard.aspx.

15. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call.*" *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added)

16. Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

17. As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use . . . any information so obtained."

18. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

19. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                        5

20.    Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).  Plaintiff does so, here, against Alarm.com.

## II.    Defendants Violate the California Invasion of Privacy Act

21.    Talkdesk "leverage[s] AI to transform every step of the customer journey for a faster and more frictionless customer experience. [Its] CX Cloud[] and Industry Experience Clouds[] are supercharged with generative AI to automate customer self-service, empower agents, uncover hidden opportunities, and operationalize AI."[6]

22.    Talkdesk's Service includes several components: *inter alia*, Agent Assist, CX Sensors, Interaction Analytics, QM Assist, Virtual Agent, and Call Recording.

23.    Talkdesk Agent Assist is "a solution that transcribes call interactions in real-time, using Natural Language Understanding (NLU) and Natural Language Processing (NLP). Agent Assist recognizes [caller] intent, and automatically provides [contact center] agent[s] with recommendations, improving speed to resolution and handling time."[7]  And "by the time [a] call is finished, it can provide[] an automatic summary of the conversation, that the agent can copy to other systems such as [a] CRM tool."[8]

24.    Talkdesk CX Sensors is a "product that allows [clients] to stay on top of customer issues by defining a set of keywords to be monitored and fine-tuning them by setting parameters based on the number of hits, time range, and frequency."[9]

25.    Talkdesk Interaction Analytics is "a tool that collects, transcribes, and analyzes every customer interaction to generate insights that enable faster customer-centric decisions."[10] This allows clients to "identify key conversation moments, topics, and sentiments[,] help[ing to] understand customer intent, uncover trends, and provide actionable insights into the[ir] business."[11]

---

[6] https://www.talkdesk.com/contact-center-platform/ai/.

[7] https://support.talkdesk.com/hc/en-us/sections/360009231532-Talkdesk-Agent-Assist.

[8] https://support.talkdesk.com/hc/en-us/articles/16761287647259-Agent-Assist-Automatic-Summarization-Agent-Next-Steps-and-Disposition.

[9] https://support.talkdesk.com/hc/en-us/sections/6174855639707-Talkdesk-CX-Sensors.

[10] https://support.talkdesk.com/hc/en-us/sections/360012996111-Talkdesk-Interaction-Analytics.

[11] https://support.talkdesk.com/hc/en-us/articles/360058760372-Interaction-Analytics-Overview.

To "use Interaction Analytics, . . . call recording must be enabled for both inbound and outbound calls."[12]

26.     Talkdesk QM Assist allows clients to "[a]ugment [] evaluation capabilities by adding an AI and speech analytics layer to [their] standard Quality Management tools."[13]  With it, clients can "[e]mpower [their] supervisors and quality analysts with searchable transcripts, sentiment analysis and automated interaction scoring, [and] spend more time coaching agents."[14]

27.     Talkdesk Virtual Agent "is an artificial intelligence-powered conversational assistant that autonomously solves customers' issues with a human-like experience. . . . Once an incoming call from the customer is received in [a] contact center, . . . the Virtual Agent Studio component is executed. As soon as the customer asks a question, technologies such as Speech-to-Text, Text-to-Speech, Natural Language Understanding (NLU), Natural Language Processing (NLP), and Natural Language Generation (NLG) are put in place to understand and provide the necessary answers to the customer."[15]

28.     On its webpage concerning call recording, Talkdesk notes, "while Talkdesk offers the option for you to record calls, if you choose to use this service, then you must comply with all state and federal laws, regulations, and rules prior to recording any telephone calls."[16]

29.     When Talkdesk uses its Service on a phone conversation, it is not like a tape recorder or a "tool" used by one party to record the other.  Instead, Talkdesk—a separate and distinct third-party entity from the parties to the conversation—uses its Service to eavesdrop upon, record, extract data from, and analyze a conversation to which they are not a party.  This is because Talkdesk itself is collecting the content of any conversation.  That data is then analyzed by Talkdesk in the manner alleged above before being provided to any entity that was a party to the conversation (like Defendant).

---

[12] *Id.*

[13] https://support.talkdesk.com/hc/en-us/sections/6426084121499-Talkdesk-QM-Assist.

[14] *Id.*

[15] https://support.talkdesk.com/hc/en-us/articles/4405087529883-Virtual-Agent-Voice-Overview.

[16] https://support.talkdesk.com/hc/en-us/articles/210267373-Call-Recording.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    7

30. Talkdesk has the capability to use the contents of conversations it collects through its Service for its own purposes.  In the "Talkdesk Privacy Notice,"[17] Talkdesk explains:

> When Talkdesk provides a cloud service and acts on behalf of its customers, Talkdesk acts as a processor or subprocessor depending on the customer's responsibility.
>
> . . .
>
> [T]he information that is collected includes:
>
> Call recording: if configured in such a way, call recordings will [] be collected.
>
> Content data: personal data that may be included in communications or as a result of Talkdesk products and services, as controlled by Talkdesk customers. Content data may include, as applicable to the respective service:
>
> Call Transcriptions: content data resulting from call transcriptions, where instructed by our customers.
>
> . . .
>
> Talkdesk may keep anonymized information (that will not identify directly or indirectly any agent, contact, or customer) for longer periods for analysis of how [its] service is used and for the improvement of it.

Thus, Talkdesk has the capability to use the wiretapped data it collects through its Service to, *inter alia*, analyze how its services are used and improve its services.

31. Envision's Service includes "AI [f]or [c]ontact [c]enters" called "Click2Coach AI[.]"[18]  With Click2Coach AI, Envision clients can "score every [telephone call] interaction on sentiment, silence, over-talk, etc. to easily surface . . . coaching opportunities [for call center agents] or an entire team of agents[.]"[19]  Envision explains, "our AI system listens to every call"[20] and "[r]ecord[s] phone calls[.]"[21]

---

[17] https://www.talkdesk.com/terms-of-service/privacy-notice/.

[18] https://www.envisioninc.com/.

[19] *Id.*

[20] *Id.*

[21] https://www.envisioninc.com/solutions/what-we-do.

32.    When Envision uses its Service on a phone conversation, it is not like a tape recorder or a "tool" used by one party to record the other.  Instead, Envision—a separate and distinct third-party entity from the parties to the conversation—uses its Service to eavesdrop upon, record, extract data from, and analyze a conversation to which they are not a party.  This is because Envision itself is collecting the content of any conversation.  That data is then analyzed by Envision in the manner alleged above before being provided to any entity that was a party to the conversation (like Defendant).

33.    Envision has the capability to use the contents of conversations it collects through its Service for its own purposes.  In a patent assigned to Envision Telephony, Inc. and related to the Envision Service – Patent Number 9699312, entitled "Systems and methods for desktop data recording for customer agent interactions"[22] – it is explained: "Upon the conclusion of an interaction with a third party, [Envision] stores all of the recorded/collected data in addition to any metadata as a single interaction for future review and analysis. . . . After the recorded data is transmitted to the server, it is typically securely stored by the server and then deleted permanently from the agent's computer."  Thus, Envision has the capability to use the wiretapped data it collects through its Service for, *inter alia*, review and analysis.

34.    Per Talkdesk's website, Alarm.com "was founded in 2000 to keep homes and businesses safe. Taking a smarter approach to security, Alarm.com believes that an integrated, all-in-one solution protects homes and businesses from intruders, vandalism, theft, and unexpected activity."[23]  With Talkdesk, "Alarm.com has substantially reduced occupancy and handle time, optimized [its] ring groups to better serve customers and help new hires learn the job, and lowered the number of cases opened.'"[24]

35.    A case study produced with Mary Kidd, the Systems Manager of Customer Operations at Alarm.com,[25] further reveals that, Alarm.com "launched Talkdesk in November

[22] https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9699312.

[23] https://www.talkdesk.com/customers/alarm-com/.

[24] *Id.*

[25] https://upshotstories.com/stories/how-best-in-world-customer-support-found-a-best-in-class-contact-center-solution.

2020, and the results have been incredible. [Its] CSAT survey response quadrupled from 5% to 20%, supplying [Alarm.com] with a clearer picture of caller sentiment. The Talkdesk callback system yielded efficiency gains . . . translating into significant cost savings and an improved customer experience."[26]

36.    The same case study also states: "Along with Talkdesk, [Alarm.com] purchased Envision, a workforce optimization platform that seamlessly integrates with Talkdesk and offers speech-driven quality monitoring, coaching, eLearning, compliance, and performance management tools."[27]

37.    Thus, Alarm.com employs the Talkdesk and Envision Services.  Through the Services, Talkdesk and Envision—as aided, agreed with, employed by, permitted by, or otherwise enabled by Alarm.com—read, learn, monitor, and otherwise intercept the content of communications between Alarm.com and its customers.

38.    During consumers' calls, Alarm.com fails to inform consumers, prior to any recording: (i) that third parties, Talkdesk and Envision, are listening in on consumers' communications with Alarm.com, (ii) that third parties, Talkdesk and Envision, are tapping or otherwise making an unauthorized connection with the consumer's telephone conversation using the Services, and (iii) that the content of consumers' communications with Alarm.com are being recorded, collected, intercepted, and analyzed by third parties, Talkdesk and Envision, using the Services.  Alarm.com therefore failed to procure consumers' consent for the conduct at issue.  And during these calls, consumers reasonably expected their conversations with Alarm.com to be only between themselves and Alarm.com.

**III.    Plaintiff's Experience**

39.     Plaintiff Castillo has had conversations on Alarm.com's telephone line, including in or around February 2024, when Alarm.com called him regarding a false alarm at his home.

40.    During these calls, Plaintiff reasonably expected his conversations with Alarm.com to be only between himself and Alarm.com.

---

[26] *Id.*

[27] *Id.*

41.     On his calls, Plaintiff spoke to an IVR system and also spoke with a human Alarm.com contact center agent.

42.     When speaking with the IVR system, Plaintiff reasonably expected the conversations would be only between himself and Alarm.com.  Plaintiff was not aware, nor did he have any reason to suspect, that the IVR system was being provided by a third party, Talkdesk, rather than Alarm.com.  He did not expect or have any reason to expect that Talkdesk, a third party, was listening in on his conversations.

43.     When speaking with the Alarm.com contact center agent, Plaintiff reasonably expected the conversations would be only between himself and the Alarm.com contact center agent.  Plaintiff was not aware, nor did he have any reason to suspect, that call recording, transcription, and analysis were being provided by third parties, Talkdesk and Envision, rather than Alarm.com.  He did not expect or have any reason to expect that Talkdesk and Envision, third parties, were listening in on his conversations.

44.     Nonetheless, Talkdesk and Envision, through the Services, eavesdropped on Plaintiff's entire conversation with the Alarm.com contact center agent.  Talkdesk and Envision, through the Services, monitored the conversation between Plaintiff and Alarm.com.  Talkdesk and Envision recorded and transcribed Plaintiff's conversation in real time, and performed AI analysis thereon.

45.     Through this process, Talkdesk and Envision read and learned, in real time, the contents of Plaintiff's conversation with Alarm.com.

46.     Alarm.com failed to inform Plaintiff, prior to recording: (i) that third parties, Talkdesk and Envision, were listening in on Plaintiff's communications with Alarm.com, (ii) that third parties, Talkdesk and Envision, were tapping or otherwise making an unauthorized connection with Plaintiff's telephone conversation using the Services, and (iii) that the content of Plaintiff's confidential communications with Alarm.com were being recorded, collected, intercepted, and analyzed by third parties, Talkdesk and Envision, using the Services.  Alarm.com therefore failed to procure Plaintiff's consent for the conduct at issue.

47. Plaintiff has, accordingly, had his privacy invaded and been exposed to the risks and harmful conditions created by Alarm.com's violations of CIPA alleged herein.

## CLASS ALLEGATIONS

48. Plaintiff seeks to represent a class defined as all California residents who called Alarm.com's customer service line while in California and whose conversations with Alarm.com were intercepted and recorded by Talkdesk and/or Envision.

49. The following people are excluded from the Class: (i) any Judge presiding over this action and members of his or her family; (ii) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

50. **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendants' records.

51. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

      (a)     Whether Defendants violated CIPA § 631;

      (b)     Whether Defendants violated CIPA § 632;

(c)     Whether Defendants sought or obtained prior consent—express or otherwise—from Plaintiff and the Class; and

(d)     Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

52.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class members, called Alarm.com's telephone line and had the content of his communications with Alarm.com read, learned, analyzed, and/or examined by Talkdesk and Envision.

53.     **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

54.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation Of The California Invasion Of Privacy Act,
Cal. Penal Code § 631(a)**

55.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

57.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

58.     To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    14

59. The Services are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

60. Talkdesk and Envision are separate legal entities from Aalrm.com that offer "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Talkdesk and Envision were third parties to any communication between Plaintiff and members of the Class, on the one hand, and Alarm.com, on the other. *Id.* at 521; *see also Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.")

61. Talkdesk and Envision are third party wiretappers because they have the capability to use the contents of conversations they collect through the Services for their purposes, other than simply furnishing the recording to Defendants. *Javier v. Assurance IQ, LLC*, 2649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *see also Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023).

62. At all relevant times, through the Services, Talkdesk and Envision violated the first prong of CIPA § 631(a) by intentionally tapping, electrically or otherwise, the lines of telephone communication between Plaintiff and Class Members, on the one hand, and Alarm.com, on the other hand.

63. At all relevant times, through the Services, Talkdesk and Envision violated the second prong of CIPA § 631(a) by willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiff and Class Members, on the one hand, and Alarm.com, on the other hand, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California,.

64. At all relevant times, by contracting for the provision of the Services and allowing Talkdesk and Envision to access and intercept Plaintiff's and Class Members' communications,

Alarm.com violated the fourth prong of CIPA § 631(a) by aiding, agreeing with, employing, permitting, or otherwise enabling Talkdesk's and Envision's unlawful wiretapping.

65.    Alarm.com failed to inform Plaintiff and Class Members: (i) that third parties, Talkdesk and Envision, were listening in on communications between Plaintiff and Class Members, on the one hand, and Alarm.com on the other hand; (ii) that third parties, Talkdesk and Envision, were tapping or otherwise making an unauthorized connection with Plaintiff's and Class Members' conversations with Alarm.com using the Services; and (iii) that the content of Plaintiff's and Class Members' communications with Alarm.com were being recorded, collected, intercepted, and analyzed by third parties, Talkdesk and Envision, using the Services.

66.    Accordingly, neither Plaintiff nor any Class Member provided their prior consent to Talkdesk's and Envision's interception of their communications with Alarm.com, nor did Plaintiff and Class Members consent to Alarm.com's employment of the same.

67.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Alarm.com's violations of CIPA § 631(a).

## COUNT II
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 632(a)

68.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

69.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

70.    CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio."  Cal. Penal Code § 632(a).

71.    The Services are each an "electronic amplifying or recording device."

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                        16

72. At all relevant times, Alarm.com intentionally used the Services to record the confidential communications of Plaintiff and Class Members.

73. At all relevant times, the communications between Plaintiff and Class Members, on the one hand, and Alarm.com, on the other, were confidential. The communications included intimate household information (i.e., concerning home security).

74. When communicating with Alarm.com, Plaintiff and Class Members had an objectively reasonable expectation of privacy. Plaintiff and Class Members did not expect that Alarm.com would intentionally use an electronic amplifying or recording device to record their confidential communications.

75. Plaintiff and Class Members did not consent to Alarm.com's intentional use of an electronic amplifying or recording device to record their confidential communications.

76. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Alarm.com's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

    (a)    For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

    (b)    For an order declaring that Defendants' conduct violates the statute referenced herein;

    (c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    (d)    For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

    (e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  February 29, 2024                    Respectfully submitted,

**BURSOR & FISHER, P.A**.

By: _L. Timothy Fisher_

     L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
     jvenditti@bursor.com

**BURSOR & FISHER, P.A**.
Joseph I. Marchese*
1330 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*